IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELPHALA SESSAY<br>     Plaintiff,<br>vs.<br>PEOPLES COMMERCE, INC.<br>and<br>ADMIRAL RECOVERY SYSTEM, LLC<br>     Defendants | CIVIL ACTION<br><br>NO. 17-cv-03219(MSG) |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST PEOPLES COMMERCE, INC.**

  Plaintiff, Kelphala Sessay, moves for summary judgment in his favor against Defendant Peoples Commerce, Inc. ("PCI") as to PCI's liability under the Fair Credit Extension Uniformity Act, 73 P.S. §§ 2270.1, *et seq.*, the Pennsylvania Uniform Commercial Code, 13 Pa. C.S. § 2A525, and for battery.[1]  Plaintiff also moves for summary judgment as to Defendant's counterclaim for breach of contract.  As to all of these claims, there is no genuine dispute of material fact and Plaintiff is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  In support of his motion, Plaintiff incorporates the attached Memoranda of Law, Statement of Undisputed Facts, and exhibits thereto.

Date: July 9, 2018

               s/*Andrew M. Milz*
               CARY L. FLITTER
               ANDREW M. MILZ
               JODY THOMAS LÓPEZ-JACOBS

               Attorneys for Plaintiff
               FLITTER MILZ, P.C.
               450 N. Narberth Avenue, Suite 101
               Narberth, PA 19072
               (610) 822-0782

---

[1] Plaintiff's damages and Defendant PCI's liability for negligence will be resolved at trial.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELPHALA SESSAY<br>                         Plaintiff,<br>vs.<br><br>PEOPLES COMMERCE, INC.<br><br>               and<br><br>ADMIRAL RECOVERY SYSTEM, LLC<br>                         Defendants | CIVIL ACTION<br><br>NO. 17-cv-03219(MSG) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PEOPLES
COMMERCE, INC.**

## I.   INTRODUCTION

On a Sunday morning, Kelphala Sessay drove with his fiancé and her daughter to pick up his mother for church. While outside his mother's home, a repo man attempted to forcibly take Sessay's car by violence while Sessay's fiancée's eight-year-old daughter sat crying in the back seat. The repo man brandished a firearm, threatened to arrest Sessay, and elbowed him in the stomach where he recently had surgery performed. The violent incident quickly caused a commotion in the neighborhood. When police arrived at the scene, the repo man used them to help him repossess the vehicle.

The violent repo man was ordered to take Sessay's car by a used car leasing company called Peoples Commerce, Inc. ("PCI")—the lessor of Sessay's car. But, the repo order should never have issued. PCI ordered the repossession even though Sessay was current on all payments. Before the repossession, PCI stole over $400 from Sessay's bank account and refused to return it. In actuality, Mr. Sessay was overpaid on his lease at the time of repossession.

Sessay thereafter sued PCI and its repo agent—Admiral Recovery System, LLC ("Admiral") for breaching the peace, repossessing his car, and stealing other money and property (including property in the car).[2] Sessay alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, the Fair Credit Extension Uniformity Act, 73 P.S. §§ 2270.1, *et seq.*, and the Pennsylvania Uniform Commercial Code, 13 Pa. C.S. § 2A525, as well as state law claims of battery and negligence. Admiral is in default. (ECF 9).

In a brazen move, PCI counterclaimed Sessay for over $2,000 in alleged financial losses stemming from the lease of the car they already re-leased to another consumer. PCI has admitted in its Rule 30(b)(6) deposition to lacking any basis for its ill-advised, retaliatory counterclaim.

PCI has had a fair opportunity to seek discovery, as has Admiral—who remains in default and has not responded to any discovery requests. Plaintiff Sessay accordingly moves for summary judgment as to PCI's liability for battery and for violations of the FCEUA and the UCC arising from the groundless repossession and the violent conduct of its repo man. Sessay also moves for summary judgment on PCI's baseless counterclaim. For the reasons described blow, Sessay's Motion for Summary Judgment should be granted.

## II.   FACTS

### A.  PCI's Used Car Leasing Business and Churning Scheme.

PCI is in the business of leasing used vehicles to consumers. (Statement of Undisputed Facts ("SUF") ¶ 1). PCI comingles its operation with a car lot called DriveHere. (SUF ¶ 2). PCI

---

[2]   PCI was sued by the Pennsylvania Office of the Attorney General for violations of numerous consumer protection laws. *See Pennsylvania v. DriveHere.com Inc.*, No. 2015-05139 (Montgomery C.C.P). Last year, PCI entered into a Consent Petition, enjoining them from violating various consumer protection laws and subjecting them to ongoing compliance obligations. Incredibly, PCI's corporate designee testified that he did not know about the Attorney General's lawsuit. (Exhibit "F," James Dep. at pp. 54:19–22, 185:16–18).

leases used cars to consumers, and DriveHere supplies the cars. (SUF ¶ 4). PCI and DriveHere share approximately 30 employees. (SUF ¶ 3).

In PCI's business model, it is not uncommon for PCI to re-lease and re-repossess a vehicle multiple times. (SUF ¶ 6). When PCI repossesses a car, PCI holds the consumer responsible for the deficiency balance, even if PCI re-leases the vehicle from its own lot to someone else. (SUF ¶ 5). This revolving-door type scheme is known in the industry as "churning." See Ken Bensinger, *Wheels of Fortune, A Vicious Cycle in the Used Car Business*, LOS ANGELES TIMES, Oct. 30 – Nov. 2, 2011, http://www.latimes.com/projects/la-fi-buyhere-payhere/ (last visited June 3, 2018).[3]

As relevant here, PCI contracted Admiral to repossess Mr. Sessay's vehicle. (SUF ¶ 7).

**B. PCI's Repo Agent Violently Assaults Plaintiff while Repossessing his Vehicle.**

In the morning hours of Sunday, July 31, 2016, Plaintiff Kelphala Sessay drove his leased 2006 Hyundai Sonata to his mother's house to pick her up for church. (SUF ¶ 9). Mr. Sessay was in the driver's seat of the car, while his fiance and her eight-year-old daughter were passengers. (SUF ¶ 10). As it turned out, Mr. Sessay's mother decided to stay home from church because she was not feeling well. (SUF ¶ 11).

As Mr. Sessay was returning to the vehicle and began closing the car door, a "repo man" from Admiral put his foot in the door to prevent it from closing, identified himself as a repo man, and demanded that Mr. Sessay turn over the keys. (SUF ¶ 12). When Mr. Sessay refused, the repo man elbowed Mr. Sessay in the stomach, then lunged into the car across Mr. Sessay to try to wrestle the keys from his right hand. (SUF ¶¶ 13–14). The full weight of the repo man was on Mr.

---

[3]   Automobile lenders have been undergoing increasing public scrutiny for engaging in churning schemes. *See, e.g.*, Jason Guerrasio, *John Oliver Explains All the Ways Some Used-Car Dealerships take Advantage of People*, BUSINESS INSIDER, Aug. 15, 2016, http://www.businessinsider.com/john-oliver-explains-auto-lending-2016-8 (last visited June 3, 2018).

Sessay's abdomen such that the force of the struggle popped a large button off of Mr. Sessay's suit coat, and aggravated a surgical wound on Mr. Sessay's stomach. (SUF ¶ 15).

The repo man then withdrew from the car and threatened, "Now I'm gonna arrest you." (SUF ¶ 16). He then drew a gun from a holster at his hip, grabbed and twisted Mr. Sessay's wrist, and demanded that he let go of the keys. (SUF ¶ 17). Mr. Sessay refused to hand over his keys despite the pain and the threat. (SUF ¶ 18). The repo man caused such a commotion that neighbors came outside and yelled to Mr. Sessay to give the repo man the keys because he had a gun. (SUF ¶ 19).

At this time, police officers arrived at the scene. (SUF ¶ 20). The repo man threatened Mr. Sessay that he would tell the police the car was stolen if he did not turn over the keys. (SUF ¶ 21). When Mr. Sessay again refused, the repo man told the police that Mr. Sessay was in a stolen vehicle. (SUF ¶ 22).

The officers checked Mr. Sessay's paperwork and confirmed that he lawfully leased the vehicle. (SUF ¶ 23). The officers talked to the repo man and looked at something on his phone that was never shown to Mr. Sessay, then the police took Mr. Sessay's keys and gave them to the repo man. (SUF ¶ 24). The repo man then hooked the vehicle up to a tow truck and left the scene. (SUF ¶ 25).

Mr. Sessay's fiancée's eight-year-old daughter was sitting in the back seat at the time that the repo man physically attacked and violently threatened Plaintiff. (SUF ¶ 26). She cried from the beginning of the incident until after the family was able to leave the scene. (SUF ¶ 26).

PCI is aware of no facts that dispute Mr. Sessay's testimony about the conduct of Admiral during the repossession. (SUF ¶ 27). PCI is aware of no facts that dispute that the repo man threatened Mr. Sessay, caused a commotion, and pulled out a gun. (SUF ¶ 28). PCI is aware of no

facts to dispute Sessay's claim that the repo man threatened to report the car as stolen, and then told the police it was stolen. (SUF ¶ 29).

Similarly, Admiral has not come forward with any facts to dispute Plaintiff's account of events. Admiral is in default. (ECF 9). Plaintiff noticed Admiral's deposition, but no one appeared. (SUF ¶¶ 30–31).

### C. Facts Pertaining to the Leased Vehicle

The car that Admiral repossessed was a used 2006 Hyundai Sonata that Mr. Sessay leased from PCI for his own personal use. (SUF ¶ 32). The lease was executed on January 21, 2016. (SUF ¶ 33). Pursuant to the lease agreement, PCI took a security interest in certain insurance and warranty proceeds. (SUF ¶ 34).

Mr. Sessay experienced electrical issues with the car evidenced by the radio shutting off and problems with the lights. (SUF ¶ 35). Mr. Sessay took the vehicle to PCI's garage to have it fixed, however the problems continued without any change. (SUF ¶ 36).

### D. PCI Steals Money from Plaintiff's Bank Account.

Mr. Sessay regularly paid on the vehicle lease on time. (SUF ¶ 37). As part of his regularly-scheduled payments, Mr. Sessay paid his May payment on May 3, 2016 in the usual amount of $320.00. (SUF ¶ 38).

Then, without warning or any cause, PCI took $415.32 from Mr. Sessay's bank account on May 4, 2016. (SUF ¶ 39). PCI has put forth no documents or facts that contradict Mr. Sessay's contention that on May 4, 2016, PCI took $415.32 from his bank account without prior notice. (SUF ¶ 40). As a result of this unauthorized overdraft, Mr. Sessay's bank account was drawn down to $2.47 without warning. (SUF ¶ 41).

After Mr. Sessay complained that he made the payment the day before on time, PCI's Payment Manager emailed Mr. Sessay to say that it was a mistake and that the unauthorized $415.32 would be returned to his account. (SUF ¶ 42). PCI is aware of no facts that contradict Sessay's statement that he complained to PCI about making the payments, and that the payment manager emailed him to say that the unauthorized $415.32 debit was a mistake and would be returned to his account. (SUF ¶ 43).

The unauthorized payment was never returned. (SUF ¶ 44). Instead, PCI's records show that PCI incorrectly applied the $415.32 to a down payment that Mr. Sessay <u>already paid in full</u> at the time of signing. (SUF ¶ 45). PCI admits that Mr. Sessay made a $320 down payment at the time of signing, as reflected by their records. (SUF ¶ 46). PCI cannot explain why the $415.32 payment was reapplied to the down payment. (SUF ¶ 47).

When the June payment became due, Mr. Sessay asked that the amount taken without authorization or reason from his account be applied to his June bill. (SUF ¶ 48). Peoples Commerce stated that it considered the unauthorized amount the Payment Manager withdrew to have been returned to Mr. Sessay (even though it never was), and PCI insisted that Mr. Sessay pay his June payment. (SUF ¶ 49). But Peoples Commerce never returned the $415.32 it stole from Mr. Sessay's account and incorrectly applied to a nonexistent down payment obligation. (SUF ¶ 49).

Mr. Sessay paid the regularly-scheduled July payment. (SUF ¶ 50). At that time, his account should have had a $95.32 *credit*, with all payments made either on time or early. (SUF ¶ 50). PCI has put forth no facts or documents that dispute Mr. Sessay's contention that he paid the regularly scheduled July lease payment. (SUF ¶ 51).

7

Despite Mr. Sessay making all of his payments, PCI improperly proceeded with the repossession of his vehicle on the basis of a missed June 2016 payment. (SUF ¶ 52). PCI is aware of no facts that dispute Sessay's contention that PCI "improperly proceeded with the repossession of Plaintiff's vehicle on the basis of a missed June 2016 payment." (SUF ¶ 53). Had PCI applied the $415.32 to Mr. Sessay's monthly lease payment obligations, Mr. Sessay would not have been considered to be in "default" and the vehicle would not have been repossessed. (SUF ¶ 54).

On July 20, 2018, Mr. Sessay complained that the reversal should have been applied to his payments. (SUF ¶ 55). PCI could not explain why it chose not to honor Sessay's request to apply the reversal to payments. (SUF ¶ 56).

After the July 31, 2016 repossession, Mr. Sessay again contacted Peoples Commerce to complain. (SUF ¶ 57). The car lot's Manager was already knowledgeable about the repossession and apologized for what happened. (SUF ¶ 57). The Manager offered to return the vehicle to Plaintiff. (SUF ¶ 58). Mr. Sessay refused because of the vehicle's defective electrical system and his mistrust of Peoples Commerce. (SUF ¶ 58). The Manager offered to form a new lease for a different vehicle. (SUF ¶ 59). Mr. Sessay again refused because he did not want to enter into new business with Peoples Commerce. (SUF ¶ 59).

### E. PCI Stole Mr. Sessay's Personal Property from his Vehicle.

One week after the vehicle was repossessed, Mr. Sessay contacted PCI to retrieve his personal property. (SUF ¶ 60). PCI stated that it was too late because it already leased the vehicle to someone else. (SUF ¶ 60). Mr. Sessay asked PCI to return his handicap placard. (SUF ¶ 61). PCI responded that the vehicle did not arrive with a handicap placard. (SUF ¶ 61).

Despite already being told he was unable to retrieve his personal property, Mr. Sessay received a misleading letter from PCI dated August 15, 2016, titled "Notice of Vehicle

Repossession." (SUF ¶ 62). Among other things, the letter stated, "If you wish to collect any personal property that may have been contained in the vehicle, please contact Peoples Commerce within 5 days and we can make arrangements for you to pick it up." (SUF ¶ 63).

### F. PCI's Unsubstantiated Counterclaim.

PCI counterclaimed Mr. Sessay for $2,336, which it claims are financial losses arising from Mr. Sessay's purported breach of the lease. (ECF 3 at pp. 18–19). During the deposition of PCI's corporate designee, PCI could not explain the basis for its counterclaim against Mr. Sessay. (SUF ¶ 64). PCI could not explain how it calculated its financial losses at $2,336. (SUF ¶ 65). PCI admits that it is not aware of any facts it intends to use to prove that Mr. Sessay owes this amount. (SUF ¶ 66). PCI admits that its claim for $2,336 is predicated on the assumption that Mr. Sessay defaulted on the lease. (SUF ¶ 67).

## III.   ARGUMENT

### A. Summary Judgment Standard

Where a party seeks summary judgment on an issue on which it will bear the burden of proof at trial—as Sessay does here with respect to his consumer protection claims—the moving party must support the motion "with credible evidence . . . that would entitle [it] to a directed verdict if not controverted at trial." *Wasserman v. Bressman (In re Bressman)*, 327 F.3d 229, 237 (3d Cir. 2003). Summary judgment must be granted unless the nonmoving party can "point to actual evidence in the record on which a jury could decide an issue of fact its way." *El v. Se. Pa. Trans. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

When the non-movant carries the burden of proof at trial—as PCI does here with respect to its counterclaim—the moving party (i.e. Sessay) has the initial burden to "demonstrate the absence of a genuine dispute of material fact." *Goldenstein v. Repossessors Inc.*, 815 F.3d 142,

146 (3d Cir. 2016) (brackets omitted). Once satisfied, the burden shifts to the non-movant to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there *is* a genuine issue for trial." *Daubert v. NRA Group, LLC*, 861 F.3d 382, 391 (3d Cir. 2017). "The moving party is entitled to judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

PCI must do more than "do more than 'simply show that there is some metaphysical doubt as to the material facts." *Daubert*, 861 F.3d at 391 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In other words, it is "put up or shut up time" for PCI as the nonmovant. *Daubert*, 861 F.3d at 391.

### B. The UCC Prohibits a Breach of the Peace during a Repossession.

Under the Pennsylvania UCC's lease provisions, a lessor has the right to take possession upon default only "if it can be done without breach of the peace." 13 Pa. C.S. § 2A525(c). This prohibition also appears in Division 9 of the UCC governing sales, which states that a secured party may repossess secured property only "if it proceeds without breach of the peace." 13 Pa. C.S. § 9609(b)(2).

"Pennsylvania courts have not specifically defined what actions constitute a breach of the peace, and there is very little case-law interpreting a breach of the peace in the repossession context." *Hyman v. Capital One Auto Fin.*, No. 3:17-89, ___ F. Supp. 3d ___, 2018 WL 557925, at *6 (W.D. Pa. Jan. 23, 2018). Nonetheless, courts around the country have interpreted this uniform language broadly to prohibit a host of conduct, including violence and threats of violence.

*See, e.g.*, *Winters v. Corry Fed. Credit Union*, No. CV 16-57, 2016 WL 7375042, at *5 (W.D. Pa. Dec. 20, 2016) (threat to drag the vehicle down the road with the plaintiff and her granddaughter inside); *Makepeace v. Chrysler Motors Corp.*, No. 80-187, 1981 WL 5572, at *4 (Ohio Ct. App. May 8, 1981) (threat to run over neighbor who, at owner's instruction, was blocking driveway to prevent repossession).

Indeed, the term "breach of peace" has been construed broadly to include "all violations or potential violations of the public peace and order. It includes all unlawful acts and acts of public indecorum that disturb or tend to disturb the public peace or good order." *Clark v. Assocs. Commercial Corp.*, 877 F. Supp. 1439, 1451 (D. Kan. 1994); *accord Rivera v. Dealer Funding, LLC*, 178 F. Supp. 3d 272, 279 (E.D. Pa. 2016) (stating that the classic definition includes "a violation of the public order, a disturbance of tranquility, by an act or conduct inciting to violence or tending to provoke or excite others to break the peace").

Additionally, there is "a line of authority that says that use of law enforcement agents in repossessions itself creates a constructive breach of the peace." *Hyman*, 2018 WL 557925, at *6. This is consistent with the Official Comments to the UCC, which specifically provide that the UCC "does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law-enforcement officer." UCC § 9609, cmt. 3.[4]

### C.  PCI is Vicariously Liable for its Repo Agent's Breach of the Peace.

Self-help repossession is an inherently dangerous activity.  As such, a creditor such as PCI has a nondelegable statutory duty to avoid breaching the peace when repossessing a vehicle—a duty that cannot be assigned to a contractor.  Section 2A525(c) expressly prohibits a "lessor" from repossessing property without judicial process only if can be done without breaching the peace.

---

[4]    The Pennsylvania Supreme Court has advised that "[o]fficial comments are to be given weight in the construction of statutes." *Lessner v. Rubinson*, 592 A.2d 678, 680 (Pa. 1991).

This statutory prohibition places a nondelegable duty on lessors. *Cf. Simmons v. Lehigh Valley Coal Co.*, 240 Pa. 354, 358 (1913).  In *Simmons*, a mineowner was sued for damages flowing from its failure to provide mine exit passageways, required by statute. *Id.* at 357.  The mineowner argued that the mine foreman was responsible for providing these safety precautions, but the Court disagreed, finding the mineowner had a nondelegable, statutory duty to provide proper passageways.

This ruling is consistent with longstanding, common law principles expressed in the Restatement (Second) of Torts, which provides:

> One who by statute . . . is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions.

RESTATEMENT (SECOND) OF TORTS § 424 (1965).

Applying these longstanding principles to the UCC, courts around the country have held that a creditor/lessor has a nondelegable statutory duty under the UCC to avoid breaching the peace when repossessing a vehicle.  *See, e.g.*, *Doucette v. Belmont Sav. Bank*, No. ESCV20161596D, 2017 WL 2427566, at *2 (Mass. Super. Apr. 14, 2017) (secured party has nondelegable duty, collecting cases); *Rand v. Porsche Fin. Servs.*, 167 P.3d 111, 119–20 (Ariz. Ct. App. 2007) (lessor has nondelegable duty, collecting cases); *DeMary v. Rieker*, 695 A.2d 294, 301 (N.J. Super. App. Div. 1997) (finding a nondelegable duty to avoid breaches of the peace and observing that "jurisdictions that have considered the question do impose such a duty upon parties ordering independent contractors to repossess property").

Here, PCI violated its nondelegable statutory duty to avoid breaches of the peace by virtue of the reprehensible conduct of its repo agent—Admiral.[5] The repo man attempted to violently dispossess Mr. Sessay of his vehicle by elbowing him in the stomach, aggravating a surgical wound. (SUF 14–15). The repo man then brandished a gun and threatened to arrest Mr. Sessay. (SUF 16–17). The repo man threatened to report the car as stolen and successfully enlisted the police to get the vehicle from Mr. Sessay. (SUF 21–24).[6] This conduct easily constitutes a breach of the peace under the UCC. Accordingly, the undisputed record facts establish that Plaintiff Sessay is entitled to summary judgment as to PCI's liability for breaching the peace under 13 Pa. C.S. § 2A525(c).

### D. PCI's Baseless and Violent Repossession of Plaintiff's Vehicle, and its Theft of Plaintiff's Personal Property, Violate the FCEUA.

The FCEUA is a Pennsylvania law that prohibits creditors like PCI from engaging in "unfair or deceptive practices with regard to the collection of debts." 73 P.S. § 2270.4. As applicable here, the prohibited practices are: "engag[ing] in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt," 73 P.S. § 2270.4(b)(4); "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken," 73 P.S. § 2270.4(b)(5)(v); and "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," 73 P.S. § 2270.4(b)(6). The FCEUA is enforced through the UTPCPL, which additionally requires proof that Mr. Sessay "suffer[ed] [an] ascertainable loss

---

[5] It is beyond dispute that PCI contracted Admiral to repossess the vehicle. (SUF 7).

[6] Of course, clear Third Circuit precedent prohibits police officers from acting as "curbside judges" by actively participating in a repossession. *Abbott v. Latshaw*, 164 F.3d 141, 147 (3d Cir. 1998) (denying qualified immunity to a police officer who conducted a "curbside courtroom," explaining that "it is not for law enforcement officers to decide who is entitled to possession of property"); *see also Hyman v. Capital One Auto Fin.*, No. CV 3:17-89, 2018 WL 557925, at *11 (W.D. Pa. Jan. 23, 2018).

of money or property, real or personal, as a result" of PCI's actions. 73 Pa. Stat. § 201–9.2; *Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 811 (E.D. Pa. 2016).

Under the FCEUA, one type of "unfair or unconscionable" debt collection tactics includes, but is in no way limited to, "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 73 P.S. § 2270.4(b)(6)(vi)(A). The FCEUA's federal analog—the Fair Debt Collection Practices Act ("FDCPA")—contains this same prohibition (as applied to debt collectors). See 15 U.S.C. § 1692f(6)(A). Courts interpreting this provision of the FDCPA regularly find that it is violated when a repo agent breaches the peace during a repossession, because the "right to possession" ceases when the peace is breached. *See, e.g.*, *Vantu v. Echo Recovery, L.L.C.*, 85 F. Supp. 3d 939, 943 (N.D. Ohio 2015); *Smith v. AFS Acceptance, LLC*, No. 11 C 5340, 2012 WL 1969415, at *3 (N.D. Ill. June 1, 2012) ("[I]f the debt collector violated the self-help repossession statute, by breach of the peace or otherwise, then the collector had no present right to possession of the property under § 1692f(6).").[7]

PCI committed a host of unfair debt collection practices. PCI had no basis for repossessing Mr. Sessay's vehicle. Mr. Sessay was current on all payments. (SUF 37, 50–52). What's more, PCI's own records show that they *overcharged* Sessay by debiting $415.32 from his bank account in May 2016, and—for reasons that remain unexplained—then credited the $415.32 to Mr. Sessay's down payment, which he had already paid months earlier. (SUF 39, 44–47, 49–52). In

---

[7] While the FDCPA only applies to debt collectors, the FCEUA covers both collectors and creditors. 73 P.S. § 2270.4(b); *Baldwin v. Monterey Fin. Servs., Inc.*, No. 14-2346, 2016 WL 5723734, at *11 (M.D. Pa. Sept. 30, 2016). Courts use the FDCPA case law to interpret the analogous sections of the FCEUA. *See, e.g.*, *Baldwin*, 2016 WL 5723734, at *11 (finding the FDCPA "instructive" in interpreting the FCEUA).

other words, PCI's careless accounting practices created a default where none existed. The repossession was wrongful *ab initio*. In other words, PCI had no prior right to take Sessay's car.

Despite Mr. Sessay's attempts to explain the situation to PCI, they ignored his plea and went forward with repossessing his car. (SUF 42, 52–56). PCI's baseless repossession, its baseless threats to repossess, and its breach of the peace during the repossession violate the plain language of 73 P.S. §§ 2270.4(b)(4), (b)(5)(v), and (b)(6).

Additionally, PCI's unauthorized debit from Mr. Sessay's bank account—and its later decision to apply this money to a nonexistent down payment obligation—constitute unfair and unconscionable debt collection tactics in violation of § 2270.4(b)(6), and harassing, oppressive, and abusive conduct in violation of § 2270.4(b)(4). Finally, PCI's hasty post-repossession theft of Mr. Sessay's personal property from his vehicle—including but not limited to his disability placard—also violates the above provisions. (SUF 60–63).[8]

Mr. Sessay indisputably suffered ascertainable losses as a result of PCI's wrongful conduct. PCI debited $415.32 from Mr. Sessay's bank account, which he never saw again. (SUF 39–44). PCI also converted Mr. Sessay's vehicle and the personal property within it, which he also never saw again. (SUF 49, 52–54, 60–63). It is beyond dispute that these are ascertainable losses.

Accordingly, Plaintiff Sessay is entitled to summary judgment as to PCI's liability for the above-described violations of the FCEUA.

### E.  PCI is Liable for Battery.

PCI is also liable for the battery committed by its agent, Admiral. Battery requires proof of "a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff . . . to suffer such a contact," without the plaintiff's consent. *Levenson v. Souser*, 557 A.2d

---

[8]  As discussed earlier, PCI is vicariously liable for the conduct of Admiral during the repossession of Sessay's vehicle. See Section III.A, *supra*.

1081, 1088 (Pa. Super. Ct. 1989). Here, the undisputed testimony of Sessay demonstrates that the repo man violently wrestled with Mr. Sessay to take his vehicle and shoved his elbow into Mr. Sessay's stomach, aggravating a surgical wound. (SUF 12–15). As such, harmful contact is beyond dispute, and intent to cause the contact is readily apparent from the repo man's threats. (SUF 12–17).[9] Accordingly, Plaintiff is entitled to summary judgment as to PCI's liability for the battery of its agent.

### F. PCI's Baseless Counterclaim Must be Dismissed.

This Court should also enter judgment in Mr. Sessay's favor as to PCI's counterclaim for breach of contract. PCI claims that Mr. Sessay owes PCI $2,336, but during the deposition of PCI's corporate designee, the designee could not explain how it calculated these losses. (SUF 64–65). In fact, PCI admits that it is not aware of any facts it would use to prove that Mr. Sessay owes this amount. (SUF 66). Indeed, PCI admits that the amount claimed is predicated on the assumption that Mr. Sessay defaulted on the lease (SUF 67), which is wholly unsupported by the facts. PCI's own accounting negligence manufactured this default out of thin air. Accordingly, judgment should be entered in Plaintiff Sessay's favor as to PCI's counterclaim.

## IV. CONCLUSION

PCI had the opportunity to return the money it stole from Mr. Sessay's bank account, but it chose not to. PCI could have decided that Sessay's complaints warranted further scrutiny before ordering the repossession, but it chose not to. PCI's repo agent then violently assaulted Mr. Sessay and took his car. PCI could have held onto the car for at least one week to allow Mr. Sessay to retrieve his belongings from the car, but again, it chose not to. Instead, PCI quickly re-leased the car to another consumer (and sued Mr. Sessay of thousands of dollars that he does not owe). For

---

[9] As previously discussed, PCI is vicariously liable for the conduct of Admiral during the repossession of Sessay's vehicle. See Section III.A, *supra*.

PCI, this type of "churning" scheme is business as usual. But now, PCI must be held accountable for its wrongful repossession and unconscionable conduct, and this Court should enter judgment in favor of Plaintiff Sessay as to PCI's counterclaim, and PCI's liability under the UCC, FCEUA, and for battery.

Date: <u>July 9, 2018</u>                                                   <u>s/*Andrew M. Milz*         </u>
                                                                                           CARY L. FLITTER
                                                                                           ANDREW M. MILZ
                                                                                           JODY THOMAS LÓPEZ-JACOBS

                                                                                           Attorneys for Plaintiff
                                                                                           FLITTER MILZ, P.C.
                                                                                           450 N. Narberth Avenue, Suite 101
                                                                                           Narberth, PA 19072
                                                                                           (610) 822-0782