IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELPHALA SESSAY, : | CIVIL ACTION |
| *Plaintiff,* : | |
| v. : | No. 17-cv-3219 |
| PEOPLES COMMERCE, INC., ET AL., : | |
| *Defendants.* : | |

**ORDER**

**AND NOW,** this 13th day of February, 2019, upon consideration of Plaintiff Kelphala Sessay's unopposed Motion for Partial Summary Judgment (ECF No. 22), I find as follows:

**I.     PROCEDURAL BACKGROUND**

1. Plaintiff Kelphala Sessay filed his Complaint on July 19, 2017 against Defendants, Peoples Commerce, Inc. ("PCI") and Admiral Recovery System, LLC ("Admiral"), alleging that Defendants unlawfully repossessed his vehicle. (Compl., ECF No. 1.)

2. Plaintiff brings the following claims against both Defendants: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") (Count One); Violation of the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, et seq. ("FCEUA") (Count Two); Violation of the Pennsylvania Uniform Commercial Code, 13 PA. CONS. STAT. § 2A525(c) ("Pennsylvania UCC") (Count Three); Battery (Count Four); and Negligence (Count Five).

3. On August 28, 2017, Defendant PCI filed an Answer to Plaintiff's Complaint, setting forth a counterclaim for breach of the lease agreement. Defendant PCI demanded damages of $2,336. (Def.'s Answer at 18–19, ECF No. 3.)

1

4. On September 20, 2017, default was entered against Defendant Admiral for failing to appear, plead, or otherwise defend. (Or. 9/20/17, ECF No. 9.)

5. On July 9, 2018, Plaintiff moved for partial summary judgment on the FCEUA claim (Count Two), Pennsylvania UCC claim (Count Three), and battery claim (Count Four), as well as Defendant's counterclaim for breach of contract. (Def.'s Mot. Summ. J., ECF No. 22.)

## II.   FACTUAL BACKGROUND

6. Although Defendant has failed to file a response, I am obligated to independently review the record. Taylor v. Harrisburg Area Cmty. Coll., 579 F. App'x 90, 93 (3d Cir. 2014). Accordingly, I will summarize the material facts, which are uncontested unless otherwise stated.

7. Defendant PCI leases used vehicles to consumers. (James Dep. 2/22/18 at 11:14–23, ECF No. 22-8, Ex. F.) Defendant operates its business with a third party car lot called DriveHere (not a defendant). (Id. at 11:24–12:6, 32:14–23.)

8. On January 21, 2016, Plaintiff signed a lease agreement with Defendant PCI for a used 2006 Hyundai Sonata. (Lease Agreement 1/21/16 at 1–2, ECF No. 22-3, Ex. B.) The lease provides that Plaintiff would be liable for a deficient balance if he breached the agreement, even if Defendant PCI released the vehicle to someone else. (Id. at 3; James Dep. 2/22/18 at 113:5–114:4.) Per the lease agreement, $320.00 was due at signing, which Plaintiff paid on January 21, 2016. (Id. at 1; Receipt 1/21/16, ECF No. 22-5, Ex. D.) The lease agreement further required payment of $316.08 per month to be paid over forty-three months. (Lease Agreement 1/21/16 at 1.) A late fee of $100 would be applied if the monthly payment was not paid by the first of the month. (Id. at 2.)

9. Plaintiff's Declaration states that he has made all of his regular lease payments on time. (Sessay Decl. 6/6/18 ¶ 23, ECF No. 22-2, Ex. A.) Specifically, on May 3, 2016, Plaintiff made a payment of $320.00 to Defendant PCI under the account description of "05/02 DRIVE HERE – PEOPLCONSHOHOCKEN PA." (Id. ¶ 24, Bank Statement 5/17/16 at 3, ECF No. 22-4, Ex. C.)

10. The next day, on May 4, 2016, Defendant withdrew $415.32 from Plaintiff's account under the account description of "05/04 PEOPLES COMMERCE 215-863-2200." (Sessay Decl. 6/6/18 ¶ 25; Bank Statement 5/17/16 at 4.) The record does not contain facts that dispute the $415.32 withdrawal from Plaintiff's account without Plaintiff's authorization on May 4, 2016. (James Dep. 2/22/18 at 93:7–96:18; Sessay Decl. 6/6/18 ¶¶ 25–26.)

11. Plaintiff complained to Defendant PCI about the May 4, 2016 unauthorized payment. Shortly thereafter, on June 2, 2016, Defendant's employee, Mr. Andre Green, e-mailed Plaintiff to inform him that the withdrawal was a mistake, and that $320.00 would be refunded to Plaintiff. (Sessay Decl. 6/6/18 ¶¶ 27–28; James Dep. 2/22/18 at 93:20–94:03.) Plaintiff's undisputed Declaration establishes that the May 24, 2016 withdrawal was never refunded. (Sessay Decl. 6/6/18 ¶ 29; James Dep. 2/22/18 at 96:9–97:14.) While Defendant PCI's agent testified in his deposition that their records contain an incident report note on July 8, 2016, reflecting that the "[p]ayment was reversed but was reapplied to down payment," he has also admitted that there was no record reflecting that Plaintiff received a payment reversal. (James Dep. 2/22/18 at 165:17–167:9, 168:3–15.)

12. When the June 2016 payment became due, Plaintiff asked Defendant PCI to apply the unauthorized payment of $415.32 to his June 2016 bill. (Sessay Decl. 6/6/18 ¶ 30.) If

3

Defendant had applied the $415.32 to the June 2016 bill as Plaintiff requested, his June 2016 bill would have shown a $95.32 credit. (Id. ¶ 31.) Instead, Defendant PCI advised Plaintiff that the $415.32 withdrawal was applied to a "down payment obligation," and that Plaintiff was therefore required to pay the June 2016 bill amount. (Id. ¶ 30.) Plaintiff's Declaration that this payment was never returned to him remains undisputed, as is the fact that Plaintiff paid the required "down payment" of $320, which was due at signing. (Id. at 163:4–8, 166:20–167:9.) Subsequently, Plaintiff made the regularly-scheduled July 2016 payment on time. (Id. at 96:5–98:5; Sessay Decl. 6/6/18 ¶ 31.)

13. On July 15, 2016, Defendant PCI sent a letter to Plaintiff regarding the allegedly missed June 2016 payment. (James Dep. 2/22/18 at 180:1–181:7.) On July 20, 2018, Plaintiff called Defendant and complained that the reversal should have been applied to his June bill. (Id. at 180:16–18.) Between July 20, 2016 and July 29, 2016, Defendant PCI attempted to call Plaintiff four times regarding the June 2016 payment. (Id. 180:16–182:19.)

14. On July 31, 2016, Plaintiff drove his vehicle to his mother's home to pick her up for a church service. Plaintiff's fiancé and eight-year-old daughter were also in the car. (Sessay Decl. ¶¶ 1–2.) Plaintiff parked his vehicle at his mother's home and walked to her door. As Plaintiff returned to his vehicle, a repossession agent, who was an employee of Defendant Admiral, put his foot in the door to prevent the car door from closing. He identified himself to Plaintiff as a repossession agent and demanded that Plaintiff hand over the keys to his vehicle. (Id. ¶¶ 4–5.) When Plaintiff refused, the repossession agent elbowed Plaintiff in the stomach, lunged into the vehicle to take the keys, and placed his full weight on Plaintiff's abdomen. The repossession agent exerted sufficient force to

4

pop a button off Plaintiff's coat and to aggravate a surgical wound on Plaintiff's stomach. (Id. ¶¶ 6–7.) While holding a gun, the repossession agent threatened to arrest Plaintiff. (Id. ¶¶ 8–10.) Neighbors observed the altercation and police arrived on the scene. (Id. ¶¶ 11–12.) The repossession agent told the police officers that the vehicle was stolen, but the police officers checked the paperwork and confirmed that Plaintiff lawfully leased the vehicle. (Id. ¶¶ 13–15.) Then, the repossession agent showed the police officers something on his phone, which was never revealed to Plaintiff. The police then took the keys from Plaintiff and gave them to the repossession agent, who towed the vehicle. (Id. ¶¶ 16–17.)

15. Defendant PCI paid Defendant Admiral $100 to repossess Plaintiff's vehicle. Defendant PCI has admitted that "Admiral Recovery System went out to repossess [Plaintiff's] vehicle upon the request of [Defendant PCI]." (James Dep. 2/22/18 at 60:10–62:6, 65:9–66:3, 126:19–127:14, 140:8–11.)

16. When Plaintiff complained to Defendant PCI about the repossession, and Defendant PCI's manager, who already knew about it, apologized to Plaintiff. Although Defendant PCI offered to return the vehicle to Plaintiff, Plaintiff refused to accept it. Defendant PCI's manager also offered to sign a new lease with Plaintiff for a different vehicle, but Plaintiff refused. (Sessay Decl. 2/22/18 ¶¶ 35–37.)

17. On February 22, 2018, Plaintiff deposed Defendant PCI's corporate designee, Mr. Matthew James. During the deposition, Mr. James was asked about Defendant PCI's counterclaim for "breach of contract." Mr. James responded that he was unaware how the $2,336 damage amount was calculated, but "whenever there's a breach of contract, the customer is responsible for the remainder of the lease agreement." He also stated that

he was not aware of any facts to dispute Plaintiff's allegation that Defendant PCI "improperly repossessed Plaintiff's vehicle on the basis of a missed June 2016 payment." (James Dep. 2/22/18 at 97:23–98:5; 108:2–109:16.)

18. Although Plaintiff subpoenaed a representative of Defendant Admiral, no one appeared for the deposition. (Admiral Subpoena 10/30/17, ECF No. 22-8.)

### III. LEGAL STANDARD

19. Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

20. On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling–Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

21. Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's [formatting] case, and on which that party will bear the burden at trial," summary judgment is appropriate. Id. at 322.  Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).

22. When a party fails to file a responsive brief to a motion for summary judgment, the District Court has the power to deem the motion as unopposed. Taylor v. Harrisburg Area Cmty. Coll., 579 F. App'x 90, 93 (3d Cir. 2014) (citing Hollingsworth v. Perry, 558 U.S. 183, 191 (2010)).  However, the District Court must still conduct a "thorough review of the record" and issue an opinion discussing the claims. Id.

IV.   **DISCUSSION AND ANALYSIS**

   A.   **Violation of the FCEUA (Count One)**

23. Plaintiff alleges that Defendant violated the FCEUA by (a) unlawfully repossessing Plaintiff's vehicle and (b) withdrawing $415.32 from Plaintiff's bank account.  (Compl. ¶¶ 60–66.)  Plaintiff moves for summary judgment on this claim, arguing that Defendant has not refuted the facts that Defendant unlawfully took $415.32 and the vehicle from Plaintiff.  (Pl.'s Mot. Summ. J. at 14–15, ECF No.22.)  Defendant has not responded.

24. "The FCEUA, Pennsylvania's analogue to the FDCPA, prohibits 'unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts.'" Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d Cir. 2015) (quoting 73 P.S. § 2270.2).  In part, the FCEUA provides that "[a] creditor may not engage in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt," including "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation or property of any person."  73 P.S. § 2270.4(b)(4)(i).  The FCEUA prohibits "[t]he collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  73 P.S. § 2270.4(b)(6)(i).

25. The FCEUA may be brought as a private right of action.  Kern v. Lehigh Valley Hosp., Inc., 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015).  To state a claim under the FCEUA, a plaintiff must plead that he "suffered an ascertainable loss as a result of a defendant's prohibited action."  Id.  Where the unlawful conduct involves deception or a misrepresentation, the plaintiff must establish justifiable reliance on such deceptive conduct.  Id.; Gawron v. Citadel Fed. Credit Union, No. 1536 MDA 2017, 2018 WL 3737892, at *6 (Pa. Super. Ct. Aug. 7, 2018) (granting the creditor's motion for summary judgment where the creditor presented evidence that the plaintiff had defaulted on the contract, and the evidence did not establish any misrepresentation, misleading statement, or concealment by the creditor); Pirozzi v. Penske Olds-Cadillac-GMC, Inc., 605 A.2d 373, 376 (Pa. Super. Ct. 1992) (finding that the creditor violated the UTPCPL where the creditor represented to the plaintiff that the car was "new" when it had actually been

8

damaged and repaired, and the sale of the car without providing full disclosure was deliberate).

26. Plaintiff first argues that he suffered an "ascertainable loss" of his vehicle from Defendant's "prohibited action" of using violence against Plaintiff in connection with the repossession of this vehicle. 73 P.S. § 2270.4(b)(4)(i). Defendant has not refuted any of the facts presented by Plaintiff that [establish] the repossession agent's use of violence during the repossession. (See supra ¶¶ 13–14.) Accordingly, as Plaintiff has proven the elements of his FCEUA claim regarding his vehicle, and as no genuine issue of material fact remains, he is entitled to summary judgment on that claim.

27. Plaintiff also argues that he suffered an "ascertainable loss" of his money (i.e., $415.32), resulting from Defendant's prohibited action of withdrawing this money, which was not authorized by the lease agreement. 73 P.S. § 2270.4(b)(6)(i). Plaintiff has established that Defendant withdrew $412.32 on May 4, 2016. (See supra ¶¶ 9, 16.) Defendant admits that the withdrawal was a mistake, Plaintiff's payment was not refunded, and it has no record of any payment reversal. (See supra ¶ 10.) While Defendant's representative stated in his deposition that the unauthorized payment was applied to a "down payment obligation," Plaintiff has demonstrated that no such obligation existed where Plaintiff had already paid the $320 down payment as required by the lease in January of 2016. (See supra ¶¶ 9–10, 22.)

28. Accordingly, as Plaintiff has proven the elements of his FCEUA claim regarding the $415.32, and as no genuine issue of material fact remains, he is entitled to summary judgment on that claim.

**B.   Violation of the Pennsylvania UCC (Count Two)**

29. Plaintiff also alleges that Defendant violated the Pennsylvania UCC by unlawfully repossessing his car because the repossession agent committed a battery against Plaintiff during the repossession.  (Compl. ¶¶ 72–76.)  Plaintiff moves for summary judgment on this claim, arguing that Defendant has failed to refute that the repossession agent's actions constituted a "breach of the peace" under the Pennsylvania UCC, and that Defendant PCI is vicariously liable for these actions.  (Pl.'s Mot. Summ. J. at 10–13, ECF No.22.)  Defendant has not responded.

30. The Pennsylvania UCC provides a lessor with the right to take possession of goods upon the lessee's default under the lease agreement.  13 PA. CONS. STAT. § 2A525(b).  The lessor may take possession of the goods without filing a lawsuit if the repossession "can be done without breach of the peace."  13 PA. CONS. STAT. § 2A525(c).

31. "Pennsylvania courts have not specifically defined what actions constitute a breach of the peace, and there is very little case-law [sic] interpreting a breach of the peace in the repossession context. . . . Pennsylvania courts have put an emphasis on the events that occur at the scene of the repossession, and how the secured party gained access to the real estate upon which the collateral was maintained."  Rivera v. Dealer Funding, LLC, 178 F. Supp. 3d 272, 278, 280 (E.D. Pa. 2016); Winters v. Corry Fed. Credit Union, No. CV 16-57ERIE, 2016 WL 7375042, at *4 (W.D. Pa. Dec. 20, 2016) (denying the motion to dismiss, finding that the plaintiff sufficiently alleged a breach of peace by averring that "she was in her parked car, when [the repossession agent] pulled up and blocked her vehicle; that he screamed at her, using profanities and threats of criminal charges; that she told him to go away; that he threatened to drag the vehicle down the road with

[p]laintiff, and her granddaughter, inside; and that he then swung his truck around and rammed [p]laintiff's vehicle"). "[Given that] Pennsylvania courts [have] thus indicat[ed] that even non-forceful repossessions may be found unlawful, it appears that the forcible entry alleged in the instant case clearly constitutes a breach of the peace." Laurel Coal Co. v. Walter E. Heller & Co., 539 F. Supp. 1006, 1007–08 (W.D. Pa. 1982) (citing Jackson v. Richards, 433 A.2d 888 (Pa. Super Ct. 1981)).

32. Here, the repossession agent's actions during the repossession constituted a "breach of peace" because, similar to Winters, the repossession agent here forcibly entered Plaintiff's car, threatened Plaintiff with a gun, and created a disturbance that caused the involvement of neighbors and the police. Defendant PCI has presented nothing to refute this evidence. (See supra ¶ 13.)

33. Additionally, courts in the Third Circuits applying Pennsylvania law, have found that debt collectors can be vicariously liable for the actions of their agents during a repossession. See, e.g., Rivera v. Dealer Funding, LLC, 178 F. Supp. 3d 272, 274, 280 (E.D. Pa. 2016). "As a general rule, a master may be held liable for the acts of the servant when those acts are committed during the course of his employment and within the scope of his authority. A master may be vicariously liable even in the case of assaults committed by the servant." Valles v. Albert Einstein Med. Ctr., 805 A.2d 1232, 1237 (Pa. 2002) (internal citations omitted). An act is within the scope of employment if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs within the employee's authorized time and space limits; (3) it is actuated at least in part by a purpose to serve the employer; and (4) if force is used, its use is not unexpected by the employer. Id. at 1241. An act may be within the scope of employment even though

the employer has expressly forbidden it, and even if the act is intentionally violent and causes injury. Potter Title & Tr. Co. v. Knox, 113 A.2d 549, 551 (Pa. 1955); Aliota v. Graham, 984 F.2d 1350, 1359 (3rd. Cir. 1993). However, the act must have been actuated, at least in part, to serve the employer's purposes. See Costa v. Roxborough Mem'l Hosp., 708 A.2d 490, 494 (Pa. Super. Ct.), appeal denied, 727 A.2d 1120 (Pa. 1998) (finding that a laundry employee's action was outside the scope of employment, where the employee shoved a security guard against the wall because he was upset about being questioned about his drug activity, and his conduct was not motivated by a purpose to serve the hospital).

34. Plaintiff has sufficiently established that the repossession agent's attack was within the scope of his agency with Defendant PCI because taking a vehicle is the kind and nature of work that the repossession agent was hired to perform, the battery occurred during the repossession, the battery was motivated by the purpose to repossess the vehicle for Defendant PCI, and it is not unexpected that force could be used in this context. (See supra ¶¶ 13–14.)

35. Accordingly, I conclude that Plaintiff has proven all of the elements of his Pennsylvania UCC claim and is entitled to summary judgment on that claim.

C. **Battery Claim (Count Four)**

36. Plaintiff also alleges that Defendant is vicariously liable for the battery committed by Defendant PCI's agent (i.e., the repossession agent) during the repossession. (Compl. ¶¶ 77–81.) Plaintiff moves for summary judgment on this claim, arguing that the undisputed facts establish that the repossession agent violently wrestled with Plaintiff,

which was intentionally committed in order to take the vehicle from Plaintiff. (Pl.'s Mot. Summ. J. at 10–13, ECF No.22.) Defendant has failed to respond.

37. "Under Pennsylvania common law, a battery is (1) a harmful or offensive contact with a person, (2) resulting from an act intended to cause the plaintiff or a third person to suffer such a contact and (3) undertaken without the plaintiff's consent." Lee v. City of Phila., No. CIV.A. 06-1155, 2008 WL 191213, at *2 (E.D. Pa. Jan. 22, 2008) (citing Herr v. Booten, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990)).

38. Plaintiff has established that the repossession agent caused a harmful action where he elbowed Plaintiff in the stomach, lunged into the vehicle to take the keys from Plaintiff, and placed his full weight on Plaintiff's abdomen. (See supra ¶ 13.) Plaintiff has further [proven] the undisputed fact that the repossession agent intentionally did so to take the keys from Plaintiff. (See supra ¶ 13.) Plaintiff has additionally established that Plaintiff did not consent to this conduct. (See supra ¶ 13.)

39. As explained supra, debt collectors can be vicariously liable for the actions of their agents during repossession. Defendant PCI is vicariously liable for the actions of the repossession agent because Plaintiff has satisfactorily established that Defendant PCI hired and paid the repossession agent from Defendant Admiral to act on behalf of Defendant PCI in repossessing Plaintiff's car. (See supra ¶ 14.)

40. As Plaintiff has proven the elements of the battery claim, and as Defendant has not identified any genuine issue of material fact on that claim, Plaintiff is entitled to summary judgment.

**D. Defendant PCI's Counterclaim**

41. Defendant PCI alleges a counterclaim against Plaintiff for the breach of the lease agreement, and demands damages of $2,336.  (Def.'s Answer at 18–19.)   Plaintiff responds that he is entitled to summary judgment because Defendant PCI cannot explain how it calculated the financial loss and has failed to establish that Plaintiff defaulted on the lease.   Defendant PCI has not responded.

42. "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  Hart v. Arnold, 884 A.2d 316, 332 (Pa. Super. Ct. 2005).  "Pennsylvania courts have long recognized the general principle of contract law providing that a material breach of a contract, which is vital to the existence of a contract, relieves the non-breaching party from any continuing duty of performance under the contract."  LJL Transp., Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 648 (Pa. 2009).

43. Despite Plaintiff's argument to the contrary, the record contains disputed material facts regarding the breach of contract claim.  First, there remains a genuine issue as to whether Plaintiff breached the lease agreement by virtue of his admitted failure to make the June payment.  (See supra ¶ 11.)  Second, Defendant PCI advised Plaintiff that the $415.32 withdrawal was applied to a "down payment obligation," and that Plaintiff was therefore required to pay the June 2016 bill amount.  While it is undisputed that Plaintiff was never refunded this money, and that no such "down payment obligation exists," Plaintiff has not refuted that Defendant PCI explicitly told him to pay the June 2016 payment.  (See supra ¶¶ 11–12, 16.)   Third, Defendant PCI's corporate designee specified that the

damage amount sought in the counterclaim was the amount that Plaintiff still owed under the lease agreement. (See supra ¶ 16.) Accordingly, I conclude that Plaintiff is not entitled to summary judgment as to the breach of contract counterclaim.

**WHEREFORE**, it is hereby **ORDERED** that:

- Plaintiff's Motion for Summary Judgment is **GRANTED** as to the FCEUA claim (Count Two);

- Plaintiff's Motion for Summary Judgment is **GRANTED** as to the Pennsylvania UCC claim (Count Three);

- Plaintiff's Motion for Summary Judgment is **GRANTED** as to the battery claim (Count Four); and

- Plaintiff's Motion for Summary Judgment is **DENIED** as to Defendant PCI's Counterclaim.

**IT IS FURTHER ORDERED** that Plaintiff shall file a status letter **on or before February 25, 2019**, advising the Court (a) whether he intends to pursue the FDCPA claim (Count One) in light of the fact that he did not move for summary judgment; (b) what, if any, discovery remains as to damages as to all claims; and (c) what Plaintiff's position is regarding the resolution of default entered against Defendant Admiral.

**IT IS FURTHER ORDERED** that, in light of Defendant PCI's failure to respond to Plaintiff's Motion for Summary Judgment, Defendant PCI shall also file a status letter **on or before February 25, 2019**, advising the Court whether it intends to pursue its breach of contract counterclaim.

**BY THE COURT:**

/s/ Mitchell S. Goldberg

**MITCHELL S. GOLDBERG, J.**